THE MCKENZIE FURNACE COMPANY, Appellee, *vs.* JOHN B. MALLERS, Appellant.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. CONTRACTS—*when contract will not be construed as an unqualified guaranty.* A contract by which a furnace company agrees to install a traveling grate-stoker under a boiler, of a certain rated horse power, which the other party is about to install, and guarantees that the stoker will increase the rated horse power of the boiler a certain per cent, is not an absolute guaranty that the stoker will cause the boiler to develop such additional horse power, irrespective of defects in the construction or installation of the boiler, with which the furnace company had nothing to do and which caused the boiler to develop much less than its rated horse power without the stoker.

2. EVIDENCE—*what is admissible in action for contract price of a mechanical appliance.* In an action for the contract price of a traveling grate-stoker which was to be installed under a new boiler of a certain rated horse power and was guaranteed to increase the rated horse power of such boiler a certain per cent, evidence is admissible tending to show that the failure of the stoker to cause the boiler to develop additional horse power on the test was due to defects in the construction and adjustment of the boiler, with which the plaintiff had nothing to do.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

CHARLES B. STAFFORD, for appellant.

JOB & TAYLOR, (DUDLEY TAYLOR, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a suit brought in the circuit court of Cook county by the appellee, McKenzie Furnace Company, against the appellant, John B. Mallers, upon a written contract entered

into by said parties on September 11, 1902. Mallers had contracted with the Erie City Boiler Works for the installation of two boilers, of a rated capacity of 240 horse power, in his building in the city of Chicago. By the contract involved in this case the furnace company agreed to build and furnish to Mallers two McKenzie traveling grate-stokers, for $1200 each. The stokers were to be erected under the two Erie City water tube-boilers of 250 horse power, each rated on the basis of 10 square feet of heating surface to one horse power and 2490 square feet of heating surface to each boiler. The terms of payment are as follows: "Fifty per cent when machines are delivered and erected and the balance when machines are completed, tested and accepted, considering that thirty days after completion to be a satisfactory time for the acceptance of the above machines." The work of putting in the boilers by the Erie City Boiler Works and putting the stokers under the same proceeded at the same time and was completed about January 15, 1903. The furnace company had nothing to do with the arrangement or construction of the boilers. The rated capacity of the boilers was, in fact, 240 horse power, and not 250, as stated in the contract, and there was no controversy about that fact. The stokers are a sort of movable grate used to distribute the coal under the boilers so as to obtain more horse power in a given time. They consist of transverse bars attached at the ends to endless chains, which carry the bars from the front end of the furnace to the rear, then down over a wheel and back again to the front end, where they come up around another wheeel, making a continuous circuit. The coal is put on the bars of the stoker at the front end of the furnace, and the plan is that it will be consumed when it reaches the rear. A test was made of the smaller stoker on January 20, 1903, by operating it six hours. The rated horse power of the boiler being 240, an increase of thirty per cent would make 312 horse power. For the first four hours of the test the horse power de-

veloped was greater than 312, but the last two hours it fell much below, and the average during the six hours was 304 horse power. The combustion of the coal was imperfect, and Mr. McKenzie, the president of the furnace company, claimed there was something wrong with the boilers, and a day or two following the test he came to Mallers' office and asked for another test and permission to make some alterations which would improve the conditions. Mallers assented to the proposition but afterward refused to permit the alterations and wrote to the furnace company to remove the stokers. Soon after writing that letter he took out the stokers and stored them subject to the order of the company. The larger stoker was never tested at all but was taken out without any test. The company refused to take the stokers back, and this suit was brought to recover the contract price. The defendant pleaded the general issue, and gave notice that at the trial he would prove failure of performance of the contract and would also claim damages by way of recoupment. Upon a trial there was a verdict for the contract price of the stokers, with interest, and judgment was entered on the verdict. Upon an appeal to the Appellate Court for the First District the branch of that court affirmed the judgment, and a further appeal was prosecuted to this court.

It is first contended that the trial court erred in the admission of evidence. The claim of the plaintiff at the trial was that the stokers fulfilled the guaranty; that the failure of the stoker which was tested was due to certain baffling-tile in the boiler, which had no connection with the stoker and for which the plaintiff was not responsible; that the boiler, at the time of the test, was incapable of developing its rated horse power because of the baffling-tile; that the boiler did not work with the efficiency that such a boiler usually manifests under proper conditions, and that the stoker would have worked perfectly if the boiler had been in proper condition. The position of the defendant was, that the plaintiff was bound at that test to develop 312 horse

power in the boiler even if the boiler would not develop its rated capacity of 240 horse power and was incapable of developing such power because of improper adjustment of the baffling-tile or for any other reason, and that the plaintiff was concluded by the single test which was made. His counsel now says that the contract was absolute on its face and the guaranty unqualified, and that plaintiff assumed an obligation to develop the stipulated horse power regardless of the condition of the boiler or its efficiency. He invokes well known rules of law, to the effect that oral evidence is not permissible to change the terms of a written instrument; that the courts must enforce the contracts which parties have made, and that inability to fulfill a guaranty will not excuse the guarantor. It is true that the plaintiff could only recover by proving performance of its contract, but we think that counsel is clearly wrong as to the proper construction of the contract. One ground of his argument consists of a statement of fact contrary to the evidence. He says that the tiling and its arrangement in the boiler was one of the conditions in the face of which the contract was entered into and the guaranty made. The undisputed evidence is that the boiler with its baffling-tile was not set up when the contract was made, and the plaintiff did not enter into the contract in view of the manner in which the baffling-tile was put in. The stokers were being built before the boilers were finished. Aside from that fact, we cannot give to the contract a construction so unreasonable and contrary to the common understanding as the one contended for. It is true that the rated capacity of a boiler is an estimate, only, and that a boiler rated at 240 horse power may not develop exactly that power; but when the parties referred to a boiler of 240 horse power they certainly contemplated a boiler which was expected to develop that much power. The plaintiff was entitled to have the boiler in such condition that when fired without the stoker it would produce the horse power which a boiler so rated ordinarily produces. To construe the con-

tract as requiring the plaintiff to develop 312 horse power with the boiler in such condition that it did not act normally and would not produce anything like the horse power at which it was rated would be most harsh and·unreasonable. Baffling-tile is used in boilers to check and direct the course of the heat currents, or gases, as they were termed by the witnesses. If the opening in the baffling-tile is not large enough the heat currents or gases cannot pass through but are checked, and the combustion of coal will be imperfect. There are at least two kinds of baffling-tile,—one called "C" tile and another "D" tile, from their resemblance to the shape of those letters. In this boiler the baffling-tile was "C" tile. It was afterwards removed and "D" tile was put in place of some of it and some was left out entirely, after which the boiler steamed easily. It did not work perfectly, however, until the water column was lowered six inches. This and other evidence designed to show that the fault was in the tile and the adjustment of the boiler was objected to and the objection was overruled. We think the court did not err in admitting the evidence.

It is next argued that the court erred in not directing the verdict for the defendant at the conclusion of the evidence. In ruling on that question the court could only consider the evidence favorable to the plaintiff, and that evidence satisfactorily established that the fault was not in the stoker, and that it would have developed the horse power required if the boiler had been in proper condition. The court therefore did not err in refusing to direct a verdict.

Finally, it is contended that the court erred in refusing to give instructions asked by the defendant. The court did not err in such ruling, but rather erred in giving one instruction asked by the defendant which was not the law. The first refused instruction stated that if the stokers failed to develop the horse power guaranteed, the defendant was not required to accept them if the failure to develop such power was due to the baffling in the boiler,—in other words,

it advised the jury to find for the defendant even though he was solely at fault and the stokers were all that the plaintiff agreed they should be. The second refused instruction directed a verdict for the defendant although he was at fault or blamable as to the condition of other parts of the furnace or boiler. The third instruction, which the court refused, was both abstract in form and not applicable to the case, both of which reasons furnished good ground for refusing it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*